Mr. Nolte, you may proceed. Thank you, Your Honor. May it please the Court, this case comes on appeal from the District Court's denial of summary judgment of invalidity of Claim 11, the patent suit, and the Court's grant of summary judgment in favor of plaintiff appellees in this case. I'll just refer to plaintiffs' appellees collectively as thermal life in this argument. Your Honor, this is a simple case. Creative submits that there are two bases for overturning the District Court's orders. First, Creative is entitled to summary judgment of invalidity of Claim 11 because thermal life submissions of undisputed material facts show that Creative had knowledge and possession of DIAC in the U.S. well before the critical date. Second, thermal life is not entitled to summary judgment on invalidity because Creative has documentary evidence that a third-party supplier planned to send a vial of DIAC to Creative in the U.S., corroborated testimonial evidence that Creative in fact possessed that vial of DIAC in this country before the critical date, and that these are tribal issues of contested fact that should survive summary judgment. Turning to the first issue, only the validity of Claim 11 is at issue in this appeal. Claim 11 is very broad, has only six words, and says, a dietary supplement comprising diiodothyroacetic acid. As to the preamble of Claim 11, Creative submits that the preamble, dietary supplement, is a statement of intended use and not a positive claim limitation. But even pretending that it was... before, it was not addressed either way, Your Honor. Can we really address it now? Isn't that waived? At this point, Your Honor, I think it's important in interpreting the claim. But even pretending that it was a positive claim limitation, the specification explicitly defines the term dietary supplement as something that is, one, naturally occurring, and two, has never been used. Can you help... there's a lot of arguments that feel like they're migrating throughout the district court and federal circuit level. What bases for invalidity did you argue below to the district court? It was public, what, use? Public use and knowledge in the U.S. On sale. Right. Not on sale. Not on sale. Public use and knowledge in the U.S. Okay. Did you make both of those arguments before summary judgment was rendered or after? I believe both of those arguments were made on summary judgment. Other arguments were also made, Your Honor, that are not being presented. Are you not sure? I believe so, yes, Your Honor. I don't have the briefs in front of me to point it to you, but... You counsel for creative. That's right. So we're asking, which did you rely on for summary judgment? Prior knowledge and use in the U.S. So what's the prior use? Cornelius? Cornelius, yes, Your Honor. He used the DIAC on himself, but he also possessed it, and those are admissions that have been made in response to summary judgment by the plaintiff's attorneys in this case. They admitted that he had... What if we look at that statement by the other side as just... what they mean by that is that they just don't have any evidence or knowledge to contest it, but the problem is that you still have the burden of proof by clearing convincing evidence to establish to a court that, in fact, Cornelius did have the DIAC acid and did, in fact, try to use it along with Brendan Nixon and maybe a couple other people. So the real question is, to what extent do your witnesses have corroborating evidence of what allegedly happened back in the year 2000? Well, that's our second point, Your Honor, that we do have corroboration that should withstand summary judgment. But I believe, going back to the first part of your question, that there is an admission in this case that says undisputed that he had in his possession, and this is a very detailed, specific statement of fact, that it was in a vial five to seven inches long, that it was 10 to 20 grams in a powderized form. If I were opposing that on summary judgment, I would say disputed. I would not say undisputed in response to that. I don't understand whether or not he had it in his possession. How does that affect the lack of corroboration as to his use of it as a dietary supplement? And having it in his possession doesn't seem to me to get you anything, or not get you everything you want on 102. Even if their admission is accepted by this court as an admission against interest and in urge to your benefit, I just don't see that that gets you where you need to be. Well, there's corroboration of possession, and there's corroboration of use. And corroboration of possession, I believe, is a little stronger because we have evidence from the third-party supplier, whom they also do business with, they know personally. Maybe that has something to do with why they didn't deny it. But the evidence of that use is corroborated by Mr. Cornelius' emails back and forth with this person, that it was being sent, and that in fact it was sent, and that Brenda Nixon, who is a party who is adverse to us, that she corroborated that Mr. Cornelius used it himself and others used it on themselves. There's a big argument, too, that's being made here as far as reduction to practice. But this claim, getting to the heart of it, is a naturally occurring substance. Claim 11 basically says, a dietary supplement, which is natural, not a drug, comprising a natural product. I claim a natural product, a class of natural products that is satisfied with this one natural product. What is the quote from the email that's strongest in your favor that really shows that Cornelius or Nixon actually used it? The emails don't say he actually used it. The emails all predate the DIAC being sent to Mr. Cornelius, so the emails can't show that he used it. But the emails make very clear that this supplier actually mailed it? Any statements like, hey, did you get the supply? There are no emails afterwards, but they did discuss that they would enter into a business arrangement based on selling the DIAC if the DIAC that was received by Mr. Cornelius was acceptable. So these emails are sort of perspective intel. Is that fair to say? The emails are perspective, that's right, Your Honor. But Ms. Nixon's testimony is something that the jury should have the right to hear. Basically, we're weighing an issue of credibility here, but we're doing it on summary judgment, and we don't believe that's proper. But the lower court found that Ms. Nixon, like Dr. Cornelius, were both interested parties and that her testimony standing alone therefore couldn't corroborate him. You said to me today she's an adverse witness to you, and so I asked my clerk here, that wasn't my understanding, certainly from the record, and did you establish that somehow? Because she worked at Synthrax with Dr. Cornelius, so at least based on that fact, it seems like she wouldn't be an adverse witness. It seems like she would be interested in sort of her interests would be aligned with Dr. Cornelius' interests, which would create a bias problem, which would substantiate what the district court did. So I'm just trying to pull apart what you said to see, is there enough of a fact that was created here about her being able to independently corroborate him as an adverse, disinterested witness? Actually, I would say she's an adverse witness in that she actually very much dislikes creative. That she left due to an employment dispute. Is all of that in the record? Yes, it is. Is there a deposition statement or a declaration? There is a deposition of Brenda Nixon. Saying, I can't stand Cornelius, get him away from me, but I'm still going to happen to be on his side when it comes to telling the truth in this particular case? Well, she didn't go that far, but I wish she had. But no, there's no statement where she says, I didn't... The statement that she got mad and she left after she got into a fight and that makes her adverse, that appears to me to be more a turning argument. What evidence did you submit that indicates that she is adverse to the creative? Your Honor, I don't have that deposition testimony at my disposal right now, but... And did you make this argument below that she was adverse? Yes, yes, Your Honor. We did make the argument below that she was an adverse witness to us. And did you point to evidence at the trial court? Yes, that she was fired and it was a acrimonious separation. But her husband continued to work for Cornelius at Cintrax. Right. So, I guess one of the hurdles you have is this juicy whip case where this court reversed a jury verdict of invalidity and held that no reasonable juror could find that that patent was invalid based on witness testimony that didn't have any corroborating evidence to before the filing date of the patent. So, what's the distinction? Our argument is that Ms. Nixon is corroborating testimony of an adverse party, an adverse witness who would substantiate Mr. Cornelius' statement that he used DIAC on himself. But more than that, he also not only used DIAC on himself, but possessed DIAC. And I think that's even more clear from the record that he definitely had DIAC in his possession and used it. But that should be an invalidating prior knowledge in the U.S. No, it's only true if we agreed with you on the dietary supplement thing, which you didn't raise below. That's your problem. That's not a bad argument, except that you didn't make the dietary supplement argument below that the argument of the preamble is not a claim limitation and the whole case proceeded until your reply brief, which is the first time where it came up. And so the possession argument doesn't really help you if we conclude that that issue was waived. Well, Your Honor, even if the preamble is a limitation, it's a very broad limitation. It just says that it's never been investigated as a drug and it's naturally occurring. No, see, that's not at all right. If you look at the sentence, what it says is, and I don't even know, I'm not going to try and pronounce the name of the chemical, but it is a directly naturally occurring metabolite of T3, TRIAC, and T2, comma, which has never been investigated or sold as a new drug, therefore it may be sold as a dietary supplement. It doesn't define the word dietary supplement. What that sentence clearly does is define the circumstances under which something can be sold as a dietary supplement. I can, as the FDA, make all kinds of restrictions on what you must do to sell something. It doesn't suddenly morph those restrictions into a definition of the thing itself. We respectfully disagree, Your Honor. It puts limitations on the term dietary supplement and what it is. It's a class of things. Maybe there are other limitations that could make dietary supplement even narrower, but those are limitations that should apply to the term dietary supplement. They're not limitations that apply to a dietary supplement. They're limitations that apply to what circumstances under which something can be sold as a dietary supplement, because that's what the sentence says. Well, for something to be sold as a dietary supplement, it wouldn't have to be a dietary supplement, and therefore it would have to fit within the definition of what is a dietary supplement. How connected is Derek Cornelius to Creative Compounds? He is a third-party advisor. He's highly involved in the business, but he is just a consultant. I mean, because I'm looking at this Creative Compounds v. Starmark Laboratories case that this court issued a few years ago, and it has Derek Cornelius all over this, where Derek Cornelius was trying to testify, along with Creative Compounds, to invalidate somebody else's patent. It looks to me like Derek Cornelius is more than just some garden-variety third-party consultant. That's true. He is highly involved in the business, and he consults on a regular basis. He's not like a retained consultant or a sometimes consultant. He is involved in the business. You are well into your rebuttal time. Would you like to protect that remaining time? Yes. Okay. Mr. Collins? May it please the Court, Your Honors. I think the Court is keyed on several key issues. The key here is that since 1892, the Supreme Court has made clear that oral testimony alone isn't enough to invalidate a patent. Well, it is if there are multiple oral corroborating witnesses, actually. So oral testimony standing alone by one person is not, but oral testimony by two people can be. I know of no case where oral testimony alone, without a document at some point... Woodland Trust, out of our court, says that. It lists all the circumstances under which you would consider witness testimony and bias and how you would go about corroborating. Thank you, Your Honor. And I don't know if that was cited by Creative Compounds. If it was, I'm sorry that I missed it. No, but it's... You can have one... Like, suppose that you testify as to something you saw, and then ten disinterested observers who have never met you before testify to corroborate your testimony. In what universe would that not be sufficient? So it can't just be the fact that both of the forms of testimony were oral, right? It has to go to the nature of the corroborating evidence. And oral would be less reliable, surely, than a document, but it can't be excluded per se. Right, and that's why we get the Reuter factors, we get totality of the circumstances, we get all of those things. But here, what we have is we have Synthrax, which Derrick Cornelius, I believe, owned, and we have Brenda Nixon, who worked for him, and then we have Mr. Nixon, who is Brenda who is still working for Creative Compounds. But to the extent that Dr. Cornelius said he used it as a dietary supplement, that has to be corroborated. Clearly, he's an interested person. To the extent that Ms. Nixon is corroborating her knowledge of his use, if she is likewise an interested person, she can't come up with the kind of corroboration that would be necessary to prevent summary judgment. However, if she's not an interested person, she could. If there is conflicting evidence in this record about whether she's interested or not, why doesn't that create a question of fact that should have survived summary judgment? I just sat here and reviewed Ms. Nixon's deposition transcript and what's been provided to this court. I don't see any conflict in there. She was let go from Synthrax at one point, but her husband is still working for Creative Compounds, the very defendant in this action. She's very connected. To call her uninterested, I think is not accurate. Now, she might not have the same interest as Mr. Cornelius, but she definitely has some interest in this case. So you're saying they didn't put enough evidence in the record to create a question of fact that she is either adverse to them or disinterested. That the record evidence as it stands can afford of only one possible factual conclusion in this, namely that she is an interested person. That would be my first argument, and I would say on a clear and convincing standard, and they have to meet the clear and convincing standard, that's not enough here. The second argument would be, look, they had to do more. That testing had to show something. It had to show that this was a dietary supplement, that it had some benefit. There is nothing in the test that Mr. Cornelius did, and he freely admitted that, to show that it had some benefit to your diet. That's not something he was tracking. I mean, he didn't keep documents of any of this testing. He didn't keep logs of any of this testing that he allegedly did on DIAC. None of that was recorded. It's just not the type of research, if it occurred at all, that we can rely upon to invalidate a patent like this. We have to give the patent holder the benefit of the doubt. That's why he gets the clear and convincing standard. They just don't have enough to invalidate Claim 11, even if we were to find that Ms. Nixon is somehow completely uninterested and therefore credible enough to meet the clear and convincing standard. Juicy Whip, I think, is a very good case that this Court has already talked about. In that case, there was some documentary support for what was being said by the witnesses who sought to invalidate the patent. Here, there simply is no documentary evidence. If this testing occurred where five or six people at Synthrax were taking DIAC for a period of time, there should be some logs. There should be some emails. If they were communicating outside of Synthrax with people that weren't part of the company, there should be some emails. There should be some logs. There should be some internet websites. There's nothing. There's simply nothing other than the word of two people and a third person who was working in the warehouse. As to this argument about public knowledge, page 421 – sorry, page 412 is the only place that I see public knowledge referenced at any point in the briefing below. And there, it is simply in a section heading. Was public knowledge raised in creators opening summary judgment motion? No. No. Their arguments were on sale bar, and they argued that, and they're not appealing that here. And the other argument was public use. Those were the two arguments. And that was after they gave a very cryptic interrogatory answer where we believed that the only issue was going to be prior inventorship. And so our first motion for summary judgment, which you see in the records here, is directed all at prior inventorship. Because we thought, and it seemed very clear from their interrogatory answer, that that was the theory they were going for invalidation on here. So, it has been a moving target from the beginning into this case. It is very difficult to follow. Let me link it up for you. You think it's waived on appeal? Absolutely. I can just stop there. If your honors don't have any further questions for me, I don't have any further time. Thank you, Mr. Collins. Mr. Nolte, you may finish your main rebuttal time. Your honors, it was not waived on appeal. And the page that he's referring to was Creative's summary judgment motion that says, Section 3, Creative has shown that the invention was claimed in Claim 11 was publicly known or used in this country before the invention thereof by plaintiffs. I mean, it's a full section of the summary judgment brief. Did you make an argument of public knowledge in your opening summary judgment motion? We didn't have an opening. This is our summary judgment motion. They had, I believe, multiple summary judgment motions. The content underneath that heading, did you actually focus on public knowledge, or is really the argument predicated on Mr. Cornelius and Ms. Nixon using DIAC? I'm looking down and I'm seeing public knowledge in paragraphs being discussed. I mean, it's definitely in there. It's not just in the heading. Is Mr. Nixon an employee of Creative Compounds? I do not know the answer to that right now. I don't know if he's presently an employee or not. Was he ever? He was an employee, at least. When? At the time of the DIAC supplements being sold and thereafter. He did not leave. By Creative Compounds? By Creative Compounds, yes. He did not leave when Mrs. Nixon left. What's the connection between Creative Compounds and Synthrax? There are a group of companies that Mr. Cornelius consults to, all these companies, and is available to. And at one time, Mr. Nixon was working at Synthrax, right? Synthrax, yes. And then, at least for some period of time, maybe even still today, he worked or is working for Creative Compounds. That's right. When you received the interrogatories and you were asked about your theory on invalidity, your opponent says that your response was limited to prior mentorship. Is that correct? I do not have that interrogatory in front of me, Your Honor. I'm sorry. I cannot answer that question. Do you have a final thought?  Okay. Thank you very much, Your Honor. Thank both counsels. This case is taken under submission.